*Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5724 | **DATE** | 2/11/2002 |
| **CASE TITLE** | Fournier vs. Lufthansa, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting plaintiff's motion to remand. This case is therefore remanded to the Circuit Court of Cook County. Any pending motion in this case is terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | FEB 1 2 2002 date docketed | 12 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 2/11/2002 | |
| MPJ courtroom deputy's initials | | 02 FEB 11 PM 3:43 FILED Date/time received in central Clerk's Office | date mailed notice MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DR. JOHN H. FOURNIER,           )
                                )
         Plaintiff,             )
                                )
    v.                          )
                                )
LUFTHANSA GERMAN AIRLINES;      )
ELIZABETH DOROW, individually   )  No. 01 C 5724
and as agent of LUFTHANSA       )
GERMAN AIRLINES; **ARMIN**      )
**CARTRIMA**, individually and as )
agent of LUFTHANSA GERMAN       )
AIRLINES,                       )  FEB 1 2 2002
                                )
         Defendants.            )

## MEMORANDUM OPINION AND ORDER

Dr. John Fournier, an Illinois citizen, sued Lufthansa Airlines and two of its Illinois agents (collectively, "Lufthansa") in Illinois state court for, among other things, negligence, infliction of emotional distress, breach of warranty, defamation, and false imprisonment arising out of an air travel debacle. Lufthansa removed the case pursuant to 28 U.S.C. § 1441, and Dr. Fournier moves to remand. I grant the motion.

I.

Dr. Fournier's story is long and complicated, but the essence is this: on April 25, 2000, he flew on Lufthansa from Chicago, Illinois, to Athens, Greece, connecting in Frankfurt, Germany. When he checked in at O'Hare Airport in Chicago, he declared to a

Lufthansa agent that his checked luggage contained two handguns[1] in locked metal boxes, in compliance with United States regulations governing the transportation of firearms. Lufthansa lost his luggage in transit, and when he arrived in Athens, a Lufthansa agent told him that he would be contacted when his luggage was found, and he could then return to the airport and go through customs. Dr. Fournier left the airport without his luggage and did not go through customs. When Dr. Fournier's luggage arrived, a Lufthansa agent brought it through customs without Dr. Fournier's consent, and without declaring the guns.

A Lufthansa agent called Dr. Fournier and asked him to come back to the airport to identify some unattended luggage without tags to see if it was his. When he arrived at the airport, he was met by Lufthansa agents and Greek customs officials. His luggage, with the identification tags attached, was next to the group of people waiting for him. Although he immediately declared that his luggage contained two guns, he was arrested by the Greek authorities. The Lufthansa agent told the customs officer that Lufthansa knew nothing about the existence of the guns, and refused

---

[1] The guns are described in the complaint as "two small gold ornamented handguns, which were collector's items of a limited series." Compl. ¶ 11. Dr. Fournier says he intended to show them to other collectors in Greece. *Id.* ¶ 13. Dr. Fournier is described in his complaint as an ophthalmologist and a life-long Illinois citizen with family ties to Greece. He was traveling to Greece for the Easter holidays on a complimentary ticket given to him by Lufthansa because he had provided life-saving help to a passenger on an earlier Lufthansa flight. *Id.* ¶ 9.

2

to call the Lufthansa desk in Chicago to confirm that Dr. Fournier had in fact declared the guns in his luggage to the Lufthansa agent at check-in. As a result, Dr. Fournier was convicted in the Greek courts of gun-smuggling, and he was sentenced to sixteen months imprisonment. He returned to the United States on May 10, 2000, and he is appealing his conviction. See Notice of Removal ¶ 7.

Dr. Fournier brings this suit against Lufthansa for negligence, false imprisonment, intentional infliction of emotional distress, and a number of other causes of action under Illinois law. Lufthansa removed the case to federal court, asserting federal question jurisdiction under 28 U.S.C. §§ 1331 and 1337 on the grounds that Dr. Fournier's claims arise under a treaty commonly known as the Warsaw Convention,[2] regulations promulgated under the Federal Aviation Act, 49 U.S.C. § 40101 et seq., the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b) ("Deregulation Act"), and the federal common law governing the transportation of baggage. Dr. Fournier moves to remand the case to Illinois state court because the complaint does not state a federal cause of action on its face and because none of the federal laws cited by Lufthansa "completely preempt" his state law claims.

II.

A case filed in state court may be removed to federal court if

---

[2] Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 3014, T.S. No. 876 (1934), note following 49 U.S.C. § 40105.

3

it is one over which the federal district courts have original jurisdiction. 28 U.S.C. § 1441(a). "The party seeking removal has the burden of establishing the jurisdiction of the district court." *In re Application of County Collector of County of Winnebago, Ill.*, 96 F.3d 890, 895 (7th Cir. 1996). The removal statute should be construed narrowly, and any doubts about jurisdiction should be resolved in favor of remand. *Doe v. Allied-Signal*, 985 F.2d 908, 911 (7th Cir. 1993). If any of Dr. Fournier's claims are removable, the entire case may be removed on the basis of supplemental jurisdiction. *See* 28 U.S.C. § 1367; *see also Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13 (1983) (predating § 1367 and noting probable jurisdiction on the basis of 28 U.S.C. § 1441(c)).

Where the basis of removal is federal question jurisdiction, the plaintiff's cause of action must "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[A] cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). "A defense is not part of a plaintiff's properly pleaded statement of his or her claim," so "'a case may not be removed to federal court on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the

case.'" *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 14 (1983)). This is commonly referred to as the "well-pleaded complaint rule." *Id.*

### A. Federal Statutes and Regulations

Two corollaries to the well-pleaded complaint rule are relevant here. The first, the "artful pleading doctrine," "provides that a plaintiff may not frame his action under state law to omit federal questions that are essential to recovery." *Burda v. M. Ecker Co.*, 954 F.2d 434, 440 n.8 (7th Cir. 1992). The Supreme Court has stated that a claim may "arise under" federal law, although the plaintiff pleads it as a state law claim, if the plaintiff's "right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd.*, 463 U.S. at 13. But the right or immunity created by the Constitution or federal law must "be an element, and an essential one, of the plaintiff's cause of action," not merely an anticipated defense. *Id.* at 10 (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936)).

Lufthansa argues that a federal question appears on the face of Dr. Fournier's complaint because, in his claim for negligence, he alleges that Lufthansa failed to fully inform him of the procedures required for transporting firearms, including FAA regulations. Compl. ¶ 56(a). He also alleges that Lufthansa failed

to maintain a record-keeping procedure to inform its employees in Frankfurt and Athens that he had declared the presence of the guns, *Id.* ¶¶ 56(b)-(c), and that it failed to administer procedures to ensure that baggage containing firearms is x-rayed, completely labeled and accounted for, *id.* ¶ 56(g). Lufthansa adverts to a number of Federal Aviation Administration regulations that relate to the transportation of firearms, 14 C.F.R. §§ 108.11(d), 108.17, the use of x-ray systems, *id.* § 129.27, and the requirement to adopt and use a security program, *id.* § 129.25(e), and argues that, one way or another, I will have to examine FAA regulations to determine whether it is liable. I might consider the regulations as a defense to a duty under state law, but an anticipated defense cannot serve as the basis for removal. *See Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 129 (1974) ("To the extent that the [federal statutes] may bear on this action . . . , it is clear that their effect is no more than to overcome a potential defense to the action.").

I might also have to consider whether a violation of the regulations forms part of Dr. Fournier's state causes of action. *See Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 185 (Ill. 1999) ("[A] violation of a statute or ordinance designed to protect human life or property is prima facie evidence of negligence."). But the Supreme Court has established a bright-line rule that "the congressional determination that there should be no federal remedy

for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 814 (1986).[3] Lufthansa does not argue that there is a private right of action under the Federal Aviation Act or under FAA regulations, nor have courts addressing the question found an implied right of action. *See In re Mexico City Aircrash of Oct. 31, 1979*, 708 F.2d 400, 408 & n.12 (9th Cir. 1983) (holding "that the Federal Aviation Act does not contain an implied private right of action" and citing cases); *see also Statland v. American Airlines, Inc.*, 998 F.2d 539, 540 (7th Cir. 1993) (declining to find private right of action under ticketing practices provision of Federal Aviation Act). Nor is there a private right of action under the Deregulation Act. *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 925 (5th Cir. 1997). Thus, although a court may have to consider and interpret the Deregulation Act, the Federal Aviation Act or certain FAA regulations to resolve Dr. Fournier's state claims, the federal

---

[3] Lufthansa submitted *Schaeffer v. Cavallero*, 29 F. Supp. 2d 184 (S.D.N.Y. 1998), as additional authority in support of its response. *Schaeffer* held that, because the New York state courts had incorporated the standard set by the Federal Aviation Act, 49 U.S.C. § 44902, into a state claim for wrongful exclusion from an airplane, § 44902 was a "substantial issue" in the case. *Id.* at 186. But *Schaeffer* did not even address the question of whether § 44902 created a private right of action, so the holding cannot be squared with *Merrell Dow*.

questions involved are not "substantial" in the sense that they confer federal jurisdiction.

The second corollary is so-called "complete preemption." "Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Taylor*, 481 U.S. at 63 (citations omitted). However, "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63-64. "Unfortunately 'complete preemption' is a misnomer, having nothing to do with preemption and everything to do with federal occupation of a field. The name misleads because, when federal law occupies the field (as in labor law), every claim arises under federal law." *Lehmann v. Brown*, 230 F.3d 916, 919 (7th Cir. 2000). "Ordinary preemption," sometimes called "conflict preemption," is a defense on the merits and goes to the nature of the remedy available; so-called "complete preemption" is a doctrine of original jurisdiction and "occurs only when Congress intends not merely to preempt a certain amount of state law, but also intends to transfer jurisdiction of the subject matter from state to federal courts." *Sam L. Majors Jewelers*, 117 F.3d at 925 (citing *Taylor*, 481 U.S. at 65-66); *see also Corporate Travel Consultants, Inc. v. United Airlines, Inc.*, 799 F. Supp. 58, 61 (N.D. Ill. 1992) (Grady, J.).

Complete preemption is "extraordinary"; the Supreme Court has found complete preemption only under § 301 of the LMRA, § 514(a) of ERISA, and suits challenging ownership of Native American tribal land. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 & n.8 (1987).

In order to defeat the motion to remand, Lufthansa must show both preemption *and* congressional intent to allow removal of preempted state claims. The Deregulation Act preempts any state law relating to the rates, routes, or services of air carriers. 49 U.S.C. § 41713(b)(4)(A). Although the Seventh Circuit has not addressed whether removal is proper based on preemption by the Deregulation Act,[4] most courts that have considered the text and legislative history of the Deregulation Act have concluded that Congress did not intend to create "exclusive [federal] subject matter jurisdiction over the preemption defenses to state law claims against air carriers." *Sam L. Majors*, 117 F.3d at 925. *See also Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1253 (6th Cir. 1996); *Corporate Travel Consultants, Inc.*, 799 F. Supp. at 62-63. One court has found complete preemption by the Deregulation Act. *See Wayne v. DHL Worldwide Express*, No. CV 00-

---

[4] The Seventh Circuit has addressed the scope of the Deregulation Act's preemption, but it did so on the merits of the preemption defense rather than on the jurisdictional question of removal based on "complete preemption." *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir. 1996).

7967 CBM, 27 Av. L. Rep. (CCH) 18,439 (C.D. Cal. 2000). There the court inferred from the broad scope of the Act that Congress must have intended to provide a federal forum, *id.* at 18,443, but the scope of the Act relates only to whether the Deregulation Act preempts, not whether Congress intended to provide a federal forum for preempted claims. The court justified its holding by stating that Congress' intent to deregulate the airline industry would be frustrated if airlines could be "subjected to various, possibly conflicting, state regulations." *Id.* However, a fear of non-uniform interpretation of federal statutes by state courts does not justify removal; the United States Supreme Court may review a state denial of a federal preemption defense. *See Franchise Tax Bd.*, 463 U.S. at 12 n.12. Lufthansa has not directed me to any language in the Deregulation Act or its legislative history to persuade me that Congress intended to create federal question jurisdiction over state claims preempted by the Deregulation Act.

Lufthansa argues that the Federal Aviation Administration has an overwhelming interest in regulating airline safety, and that Dr. Fournier's claims are inherently federal because they involve the transportation of a firearm, a matter governed by the Federal Aviation Act. *See* 14 C.F.R. §§ 108.11(d), 108.17. But Dr. Fournier brought his claims under Illinois law, and the Seventh Circuit has recently held that, although Congress intended to provide a federal defense to state actions with the Federal Aviation Act, it did not

10

intend to completely displace state law and create a federal forum. *See Vorhees v. Naper Aero Club, Inc.*, 272 F.2d 398, 403 (7th Cir. 2001). *See also Schmeling v. NORDAM*, 97 F.3d 1336, 1344 (10th Cir. 1996) ("Because Congress has neither expressly nor impliedly provided [the plaintiff] with a federal cause of action to enforce the FAA [regulations], we follow the 'prudent course' . . . and hold that [the plaintiff]'s suit is not subject to removal under the complete preemption doctrine."). Because I find that Congress did not intend to confer federal jurisdiction based on a defense of preemption by the Deregulation Act or the Federal Aviation Act, I need not consider whether Dr. Fournier's claims are actually preempted by those statutes.

B. The Warsaw Convention

When it applies, the Warsaw Convention preempts state causes of action. *See El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 161 (1999). Unlike the LMRA, ERISA and cases involving tribal lands, *see Caterpillar, Inc.*, 482 U.S. at 393 n.8, the Supreme Court has not expressly stated that the Warsaw Convention *completely* preempts as a jurisdictional matter in the sense that it permits removal to federal court. Nor has the Seventh Circuit squarely addressed "complete preemption" and the Warsaw Convention, although it stated in passing that "[i]f the Warsaw Convention applies, there is federal jurisdiction, otherwise not." *Atlantic Mut. Ins. Co. v. Northwest Airlines, Inc.*, 24 F.3d 958, 959 (7th

11

Cir. 1994). However, the issue in that case was whether there was appellate jurisdiction over the denial of a motion to intervene, not whether there was legislative intent to allow removal on the basis of preemption by the Warsaw Convention. The Eighth Circuit has held that the Warsaw Convention "completely preempts" state law claims, but it used the phrase to describe ordinary preemption as a substantive defense to the state claims in that case. *Husmann v. Trans World Airlines, Inc.*, 169 F.3d 1151, 1153 (8th Cir. 1999). In a footnote, the court relied on the Supreme Court's holding in *El Al*, that the Warsaw Convention provides the exclusive remedy when it applies, to uphold removal under the well-pleaded complaint rule. *Id.* at 1153 n.5. *Cf. Rogers v. American Airlines, Inc.*, No. CIV. A. 3:01CV1127-M, 2001 WL 1343631, at *5-7 (N.D. Tex. Oct. 29, 2001) (criticizing *Husmann* and finding that Warsaw Convention does not meet Fifth Circuit's strict test for "complete preemption" removal jurisdiction because there is no evidence of congressional intent to create a federal forum).

I need not reach the issue of congressional intent, however, because even if there was an intent to create a federal forum, Lufthansa must show that the claims are in fact preempted. *See Corporate Travel Consultants*, 799 F. Supp. at 61 (removing defendant must show both ordinary preemption and complete preemption to survive motion to remand). "[T]he Convention's preemptive effect on local law extends no further than the

Convention's own substantive scope." *El Al*, 525 U.S. at 172. In *El Al*, the Supreme Court held that, although the plaintiff could not state a claim under Article 17, her claims were within the "substantive scope" of Article 17, and therefore were preempted. Article 17 establishes an airline carrier's liability

> for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

*Id.* at 162. In *El Al*, the parties agreed that the claims were within the scope of the Convention because the plaintiff's emotional injuries occurred in the course of embarking, when the plaintiff was illegally searched in the course of boarding. *Id.* at 166-67.

In a case analogous to Dr. Fournier's, decided after *El Al*, a plaintiff who was deported because she did not have a transit visa for a connecting international flight sued an airline for negligent misrepresentations (*viz.*, that she did not need a transit visa) and abandonment (*i.e.*, doing nothing in the face of imminent deportation). *See Donkor v. British Airways Corp.*, 62 F. Supp. 2d 963, 965 (E.D.N.Y. 1999). On a motion to remand, the court held that the defendant had the burden to "provide evidence that the damage suffered by plaintiff is rooted in a cause which the drafters of the convention intended to address." *Id.* at 968. The court applied a three-part test to determine whether the plaintiff

13

was embarking or disembarking, considering: (1) the plaintiff's activity at the time of the accident, (2) the plaintiff's location, and (3) whether the plaintiff was under the control of the carrier. *Id.* at 969. Because the complaint demonstrated that the plaintiff was not embarking or disembarking and the defendant came forward with no evidence outside the allegations in the complaint, the defendant had not carried its burden of demonstrating that the plaintiff's claims were within the scope of Article 17. *Id.* at 969. Here, according to the complaint, Dr. Fournier was returning to the airport to claim his luggage when he was arrested, Compl. ¶ 33, and he had already disembarked and gone into Athens, Compl. ¶¶ 29, 33, so he was not under the control of the airline. The complaint does not state where Dr. Fournier was in the airport, so it does not establish that Dr. Fournier was injured in the course of embarking or disembarking. Lufthansa argues that "the accident which resulted in Plaintiff's claims for mental anguish occurred in Frankfurt when plaintiff's checked baggage was accidentally not transferred to the aircraft which carried plaintiff from Frankfurt to Athens," and that the accident "probably" happened while Dr. Fournier was in the "sterile" part of the terminal at Frankfurt, where the Warsaw Convention applies. But in the absence of any evidence to contradict the allegations in the complaint, Lufthansa's speculations about what "probably" happened do not meet its burden of demonstrating that Dr. Fournier's claims are within the scope of

14

Article 17. *See Donkor*, 62 F. Supp. 2d at 969 ("[N]o evidence is the equivalent of negative evidence.").

*El Al* did not address the "substantive scope" of Article 19, which establishes the carrier's liability "for damage occasioned by delay in the transportation by air of passengers, baggage, or goods." Again, *Donkor* is directly on point. There the plaintiff was flying from the United States to France, with a connection in the United Kingdom. 62 F. Supp. 2d at 965. The flight from the United States was delayed, and when the plaintiff arrived at the connecting airport in the United Kingdom, she was detained by British immigration authorities and deported because she did not have a transit visa. The plaintiff did not claim that the delay was a source of her injuries. The court held that the "substantive scope" of Article 19 did not encompass claims where the plaintiff "would have suffered the same injuries regardless of the delay," and that the defendant had failed to meet its burden of demonstrating that the plaintiff's claims were within the "substantive scope" of Article 19 because it could not demonstrate what would have happened if the plaintiff's flight had been on time. *Id.* at 970.

Here Dr. Fournier brings twelve claims, ranging from negligence to intentional and negligent infliction of emotional distress, fraud and defamation. Looking at the relief he seeks, his allegations boil down to two claims: that Lufthansa mishandled his

baggage and that it made negligent or intentional misrepresentations to the Greek authorities, both leading to his arrest and conviction. There is no question that Dr. Fournier's luggage was delayed, but neither party suggests that the alleged mishandling or mislabeling of his baggage had anything to do with the delay, so the claims based on those actions are not within the scope of Article 19.

As for the alleged misrepresentations, Lufthansa argues that Dr. Fournier could have waited at the terminal for his baggage, or could have gone through customs and declared the firearms without his luggage, but that he left without clearing his baggage through customs *because* his baggage was delayed, and that Lufthansa employees would not have attempted to clear his bags through customs and made any misrepresentations had the flight been on time. It is equally possible that, even if Dr. Fournier had ushered his own luggage through customs and declared the presence of the guns, Lufthansa's refusal to call its Chicago desk to confirm whether he declared them at check-in might have resulted in Dr. Fournier's arrest. I am left only to guess whether Dr. Fournier's injuries were actually occasioned by the delay of his luggage, so Lufthansa has not carried its burden of proving that the Warsaw Convention applies. *See Donkor*, 62 F. Supp. 2d at 970. I resolve all doubts in favor of remand, *Allied-Signal*, 985 F.2d at 911, so the Warsaw Convention provides no basis for removal in this case.

### C. Federal Common Law

Finally, in its notice of removal, Lufthansa invoked the federal common law as a basis for removal, citing *Sam L. Majors Jewelers*, 117 F.3d at 925-929. There the question was whether the federal common law provided a cause of action for lost or damaged goods, and the Fifth Circuit expressly limited its holding to that issue. *Id.* at 926 & n.16. Dr. Fournier's luggage was not lost or damaged, and Lufthansa at any rate does not argue in its response that federal common law is applicable, so it has waived this argument for the purposes of this motion.

### III.

No federal question appears on the face of the complaint, and Lufthansa has not identified a body of federal law that so completely preempts state law that removal is justified, so I GRANT Dr. Fournier's motion to remand the case to the Circuit Court of Cook County.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: February 11, 2002

17